SEALED

FILED
U.S. DISTRICT COURT

2017 AUG 30 A 9: 27

DISTRICT OF UTAH

BY:_____
DEPUTY CLERK

Barnard N. Madsen (No. 4626)
Matthew R. Howell (No. 6571)
Fillmore Spencer LLC
3301 North University Avenue
Provo, Utah 84604
Tel: (801) 426-8200
bmadsen@fslaw.com
mhowell@fslaw.com

Attorneys for United States of America *ex rel.*
*Qui Tam* Relators Justin Doren and Heather Fiorita

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| [UNDER SEAL],<br><br>    Plaintiffs,<br><br>v.<br><br>[UNDER SEAL],<br><br>    Defendants. | Case: 2:17-cv-00977<br>Assigned To : Sam, David<br>Assign. Date : 8/30/2017<br>Description: Sealed v. Sealed<br><br>**COMPLAINT**<br><br>(FILED IN CAMERA AND UNDER SEAL PURSUANT TO 31 U.S.C. §§ 3729 *et seq.*)<br><br>JURY TRIAL DEMANDED |

Barnard N. Madsen (No. 4626)
Matthew R. Howell (No. 6571)
FILLMORE SPENCER LLP
3301 North University Avenue
Provo, Utah 84604
Tel: (801) 426-8200
bmadsen@fslaw.com
mhowell@fslaw.com

Attorneys for United States of America *ex rel.*
Justin Doren and Heather Fiorita

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. JUSTIN DOREN and HEATHER FIORITA,<br><br>Plaintiffs,<br><br>v.<br><br>IMSAR LLC, OUTPOST SOLUTIONS LLC, NEIL BAILEY, and JOSPEH BARTH<br><br>Defendants. | Case No.<br><br>**COMPLAINT**<br><br>(FILED IN CAMERA AND UNDER SEAL PURSUANT TO 31 U.S.C. §§ 3729 *et seq.*)<br><br>JURY TRIAL DEMANDED |

This action arises from the illegal acts committed by Defendants to obtain payment of false claims submitted to the United States in violation of the False Claims Act, 31 U.S.C. § 3729 *et seq.* Relators Justin Doren and Heather Fiorita bring the First Claim for Relief of this Complaint in the name of the United States of America under the *qui tam* provisions of the False Claims Act. Relator Heather Fiorita brings the Second

Claim for Relief under the anti-retaliation provision of the False Claims Act in her own name. Relators complain and allege as follows:

## NATURE OF THIS ACTION

1. This case includes an action to recover damages and civil penalties on behalf of the United States of America arising from false and/or fraudulent claims made and caused to be made by Defendants and/or their agents and employees in violation of the Federal False Claims Act, 31 U.S.C. §§ 3729 et seq. ("FCA"). The Complaint alleges that Defendant IMSAR, LLC ("IMSAR") knowingly submitted false claims for payment to the United States Government for services that IMSAR provided pursuant to its contract with the Department of Defense. That contract required IMSAR to supply radar equipment, personnel, and related services, support, and maintenance for radar equipment used in support of the Department of Defense's actions in Afghanistan. IMSAR's submission of false claims was in violation of 31 U.S.C. § 3729(a)(1).

2. The FCA was originally enacted during the Civil War to redress fraud against the Government, including fraud in the sale of defective products to the military. Congress substantially amended the Act in 1986 to enhance the Government's ability to recover losses sustained as a result of fraud against the United States after finding that fraud in federal programs was pervasive and that the Act, which Congress characterized as the primary tool for combating Government fraud, was in need of modernization. Congress intended the amendments to create incentives for individuals with knowledge of fraud against the Government to disclose the information without fear

of reprisals or Government inaction, and to encourage the private bar to commit legal resources to prosecuting fraud on the Government's behalf.

3. The FCA provides that any person who presents or causes to be presented false or fraudulent claims for payment or approval to the United States Government, or knowingly makes, uses, or causes to be made or used false records and statements to induce the United States to pay or approve false and fraudulent claims, is liable for a civil penalty of up to $11,000 for each such claim, plus three times the amount of the damages sustained by the federal government.

4. The FCA allows any person having information about false or fraudulent claims to bring an action on behalf of the government, and to share in any recovery. The FCA requires that the complaint be filed under seal for a minimum of 60 days (without service on the defendant during that time) to enable the United States (a) to conduct its own investigation without the defendant's knowledge, and (b) to determine whether to join the action.

5. Based on the FCA, qui tam plaintiffs and relators Justin Doren ("Mr. Doren") and Heather Fiorita ("Ms. Fiorita") (collectively, "Relators") seek to recover all available damages, civil penalties, and other relief for the federal violations alleged herein.

6. Additionally, Ms. Fiorita seeks to recover under the FCA's anti-retaliation provision.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction of this action under 31 U.S.C. § 3732(a) (the jurisdictional provisions of the False Claims Act), 28 U.S.C. § 1331 (federal question), and 28 U.S.C. § 1345 (United States as a plaintiff).

8. This Court has personal jurisdiction over IMSAR because it is headquartered and transacts business in this District.

9. This Court has personal jurisdiction over Joseph Barth ("Barth") because, on information and belief, he currently resides and at all relevant times has resided in this District.

10. This Court has personal jurisdiction over Neil Bailey because, on information and belief, he currently resides and at all relevant times has resided in this District.

11. Venue is proper in this District pursuant to 28 U.S.C. § 1391 and 31 U.S.C. § 3732(a), because Defendants reside in this District and because a substantial part of the acts and false claims giving rise to this action occurred in this District.

12. As provided by 31 U.S.C. § 3730(b)(2), this action is being filed *in camera* and under seal, and has not been served on the Defendants. Relators have provided to the United States Attorney General and to the United States Attorney for the District of Utah a copy of the Complaint and a Disclosure Statement, as required under the False Claims Act, 31 U.S.C. § 3730(b)(2).

## PARTIES

13. The Plaintiffs in this action are the United States of America, Mr. Doren, and Ms. Fiorita. Mr. Doren was a resident of Utah County, Utah, until shortly before the filing of this Complaint, at which time he relocated to Colorado Springs, El Paso County Colorado. Ms. Fiorita was a resident of Utah County, Utah, until May 2017, at which time she relocated to Massachusetts, where she is now a resident. The United States is an appropriate party plaintiff for the Claim for Relief by virtue of the False Claims Act, 31 U.S.C. § 3730(b). Mr. Doren and Ms. Fiorita bring the Claim for Relief in the name of the United States of America.

14. Defendant IMSAR, LLC ("IMSAR") is a Utah corporation with its principal office located in Utah County, Utah. IMSAR does business in Utah County, Utah, as well as other locations throughout Utah, the nation, and the world.

15. Defendant Outpost Solutions LLC (Outpost") a Wyoming limited liability company with its principal office located in Utah County, Utah. Outpost does business in Utah County, Utah.

16. On information and belief, Defendant Neil Bailey is an individual residing Utah County, State of Utah. At relevant times, Bailey was IMSAR's manager of Deployment Services.

17. On information and belief, Defendant Joseph Barth is an individual residing in Summit County, State of Utah. At relevant times, Barth was IMSAR's Vice President of Business Development and at times has been a principal of Outpost.

## FACTS

### I. The Regulatory Background.

#### A. Requirements for Contracts to Provide the Department of Defense with Contracted Services.

18. Paragraphs 1 through 17 are incorporated herein by reference.

19. Private entities that enter into contracts to supply the United States Government, including the Department of Defense or any unit or agency within the Department of Defense, are required to comply with the regulations included in the Federal Acquisition Regulation ("FAR"). FAR is located at 48 CFR 3.

20. Among other matters, FAR governs and largely, if not entirely, prohibits kickbacks being paid in relation to government contracts and seeks to implement the provisions of the Anti-Kickback Act of 1986, 41 U.S.C. §§ 8701-07.

21. A "kickback" is defined by both the Anti-Kickback Act and FAR "as any money, fee, commission, credit, gift, gratuity, thing of value, or compensation of any kind which is provided to any prime contractor, prime contractor employee, subcontractor, or subcontractor employee for the purpose of improperly obtaining or rewarding favorable treatment in connection with a prime contractor or in connection with a subcontract relating to a prime contract." 41 U.S.C. § 8701; FAR § 3.502-1.

22. The Anti-Kickback Act of 1986 prohibits kickbacks in relationship to any government contract:

A person may not--

    (1)    provide, attempt to provide, or offer to provide a kickback;

    (2)    solicit, accept, or attempt to accept a kickback; or

> (3) include the amount of a kickback prohibited by paragraph (1) or (2) in the contract price—
>
>   (A) a subcontractor charges a prime contractor or a higher tier subcontractor; or
>
>   (B) a prime contractor charges the Federal Government.

41 U.S.C. § 8702; *accord* FAR § 3.502-2.

23. Additionally, FAR requires prime contractors to have in place certain procedures to prevent and to remedy the occurrence of any violation of the prohibition on kickbacks described in the preceding paragraph. Furthermore, the prime contractor is required to include similar provisions in its contracts with others that will contribute to the prime contractor's work for the government. FAR § 3.502-3; FAR § 52.203-7.

24. A knowing violation of these FAR provisions constitutes a violation of the False Claims Act, 31 U.S.C. § 3729 *et seq.*

## II. The Evidence of Defendants' Violations of the False Claims Act.

25. Paragraphs 1 through 24 are incorporated herein by reference.

26. Mr. Doren and Ms. Fiorita were employed by Consultnet, LLC ("Consultnet") which is a professional employer organization.

27. Mr. Doren was employed by Consultnet from January 18, 2016 until April 17, 2017.

28. Ms. Fiorita was employed by Consultnet from August 12, 2013 until April 5, 2017.

29. Each of these employees was leased for their entire tenure with Consultnet to Consultnet's client, IMSAR.

30. IMSAR is a limited liability company that is involved in the business of Synthetic Aperture Radar ("SAR") Systems for manned and unmanned aircraft. SAR systems are employed by the U.S. military, among other things, to detect ground disturbances that may indicate the presence of improvised explosive devices ("IEDs") or other weapons caches of the enemy.

31. IMSAR is a prime contractor with the Department of Defense.

32. In that role, IMSAR provides services and personnel to the Department of Defense such as Imagery Analysts (IA), Field Support Technicians (FST), radars, and equipment. Initially, IMSAR used employees leased from Consultnet for these purposes.

33. While working for IMSAR as a leased employee, Mr. Doren was responsible for reachback support of deployed analysts. This included analyzing the same matters that deployed analysts review, training for new analysts, and researching and developing new programs, processes, and operating systems.

34. While working for IMSAR as a leased employee, Ms. Fiorita was responsible for IMSAR Deployment Services' operations, logistics and medical clearance for personnel; paperwork, processes, and liaison across the host country (i.e., Afghanistan), Forward Operating Base (FOB), CENTCOM, State Department, government Program Management Office (PMO) and the Joint Improvised-threat Defeat Agency.

35.     Beginning in or about mid-2016, an organization called Outpost Solutions LLC ("Outpost") began competing with Consultnet by offering its own employees to IMSAR to fill the roles that had, until then, been filled exclusively by Consultnet employees.

36.     On information and belief, Outpost is a limited liability company organized in the State of Wyoming that is doing business in the State of Utah.

37.     Outpost is wholly or largely owned by Joseph Barth ("Barth").

38.     On information and belief, until approximately late 2015, Barth was employed by Consultnet as an imagery analyst.

39.     In approximately late 2015, Barth accepted a position in which he was directly employed by IMSAR as the Vice President of Business Development. On information and belief, Barth continued to be employed by IMSAR until at least approximately July 2017.

40.     Even though Barth was hired into IMSAR's business development division and did not have responsibility for IMSAR's Deployment Services' hiring decisions, Barth effectively began making hiring decisions that related to IMSAR's Deployment Services division. IMSAR's Deployment Services is the only IMSAR division to which Consultnet leased employees. Bailey was the manager of Deployment Services and, in that role, should have made all of the hiring decisions but allowed Barth to make those decisions and failed to veto them despite Barth choosing a number of candidates that did not meet Department of Defense qualifications. Such individuals were not vetted or

interviewed as necessary to ensure that IMSAR was able to meet its contractual obligations to the Department of Defense.

41. In doing this, on information and belief, Barth, Bailey, and IMSAR ignored hiring protocols required by the Department of Defense.

42. In approximately April 2017, IMSAR informed its Consultnet contractors that, if they wished to continue to work for IMSAR, they would have to become IMSAR employees. Moreover, they were further informed that Consultnet would not be able continue their employment because IMSAR would no longer be leasing employees from Consultnet.

43. Mr. Doren and Ms. Fiorita specifically, were given two weeks' notice that their employment with Consultnet would end. At the end of those two weeks, they were told that they could either quit or become IMSAR employees. Mr. Doren and the rest of the Deployment Services team were offered positions as IMSAR employees, keeping their base pay rate. Ms. Fiorita was the only one in Deployment Services who was not offered the same. Instead, she was offered more than a 50% cut in her base rate as the starting hourly wage with IMSAR. Shortly thereafter, on April 5, Ms. Fiorita was called up to IMSAR's human resources office and informed that IMSAR was retracting her offer letter and instead terminating her that day.

44. When Mr. Doren and Ms. Fiorita inquired about IMSAR's Outpost contractors, they were told that they were being kept on for an undetermined amount of time. On information and belief, the Outpost employees were not terminated and still remain Outpost employees. Only Consultnet contractors were entirely discontinued.

45. Mr. Doren and Ms. Fiorita were both concerned that the arrangement of an IMSAR employee owning a company that effectively operated as IMSAR's sole supplier of labor for certain crucial positions related to IMSAR's work for the Department of Defense constituted or could constitute kickbacks.

46. As a result of that concern, Mr. Doren left his employment with Consultnet and IMSAR.

47. Ms. Fiorita raised her concerns with IMSAR personnel and specifically informed them that the matter warranted a call to the "hotline" to report the improper arrangement to the Department of Defense.

48. It was in direct response to these statements by Ms. Fiorita that IMSAR withdrew its offer to Ms. Fiorita.

## CLAIMS FOR RELIEF

### Count I
### Violation of 31 U.S.C. § 3729(a)(1)(A)
### (on behalf of the United States of America against all defendants)

49. Paragraphs 1 through 48 are incorporated herein by reference.

50. As a prime contractor with the Department of Defense, IMSAR regularly presented claims for payments on its contract with the Department of Defense.

51. As a subcontractor with IMSAR, Outpost regularly presented or caused to be presented claims to IMSAR that it knew or should have known would, in turn, be presented for payment to the Department of the Defense, thereby causing IMSAR to present such claims.

52. This included during the period that IMSAR was leasing employees from Outpost, that is from at least mid-2016 through the present. Throughout this period, and especially during the period that Outpost was the sole supplier of personnel used to fill certain critical roles for the Department of Defense, such billing was based on charges paid by IMSAR to Outpost. The charges paid by IMSAR to Outpost for such employees were included in the claims presented to the United States Government for payment and were false because they constituted unlawful kickbacks.

53. By virtue of the acts described above, Defendants knowingly presented, or caused to be presented, false or fraudulent claims for payment or approval to officers or employees of the United States Government.

54. As a result of these false or fraudulent claims, the United States Government suffered damages.

### Count II
### Violation Of 31 U.S.C. § 3730(h-)
### (on behalf of Heather Fiorita against IMSAR LLC)

55. Paragraphs 1 through 54 are incorporated herein by reference.

56. Ms. Fiorita was an employee, contractor, or agent that was discharged, demoted, suspended, threatened, harassed, and otherwise discriminated against in the terms and conditions of her employment and contract with IMSAR because of lawful acts done by her in furtherance of an action under the False Claims Act or other efforts to stop one or more violations of the False Claims Act.

57. As a result thereof, Ms. Fiorita has suffered damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Relators pray for judgment against Defendants as follows:

a. A permanent injunction requiring Defendants to cease and desist from violating the False Claims Act;

b. Judgment against Defendants in an amount equal to three times the amount of damages the United States has sustained as a result of Defendants' unlawful conduct;

c. Civil monetary penalties for each false and fraudulent claim submitted to the United States by Defendants;

d. An award to Relators pursuant to 31 U.S.C. § 3730(d);

e. An award to Ms. Fiorita of two times her back pay together with interest and other compensatory damages;

f. An award of reasonable attorneys' fees, costs, and expenses; and

g. Such other and further relief the Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38, Relators demand trial by jury of all issues so triable.

DATED this 29th day of August, 2017.

FILLMORE SPENCER LLC

*/s/ Matthew R. Howell*

Barnard N. Madsen
Matthew R. Howell
FILLMORE SPENCER LLP
3301 North University Avenue
Provo, Utah 84604
Tel: (801) 426-8200
Fax: (801) 426-8208

Attorneys for *Qui Tam* Relators Justin Doren and Heather Fiorita